

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RTP:PP  
F. #2021R00894

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 14, 2022

By ECF

The Honorable Carol B. Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. Michael Ross
               Criminal Docket No. 22-196 (CBA)

Dear Judge Amon:

      The government respectfully submits this letter in advance of the defendant Michael Ross' sentencing hearing, which is scheduled for January 5, 2023. For the reasons set forth below, the government respectfully submits that a sentence between 33 to 41 months' imprisonment to run consecutive to the defendant's state sentence should be imposed in this case.

I.    Background

      In approximately October 2021, Homeland Security Investigations ("HSI") and the New York City Department of Investigation ("DOI") began investigating a scheme that involved bribes paid to and received by New York City Department of Correction ("DOC") correction officers in exchange for the officers smuggling drugs and other contraband into DOC facilities located on Rikers Island. See Presentence Investigation Report ("PSR") ¶ 2. As part of the investigation, HSI agents and DOI investigators reviewed recorded calls made by inmates using the DOC's telephone system, financial records and surveillance video. See id.

      The defendant, a member of the Bloods street gang, arranged for bribes to be paid to co-defendant Katrina Patterson in exchange for Patterson using her position as a correction officer to smuggle contraband into Rikers Island to the defendant. From at least October 2020 to March 2021, the defendant instructed co-defendants Ashley Medina and

Imani Matthews to deliver at least $34,090 in bribes to Patterson. Medina or Matthews would also in some instances provide Patterson with the contraband, including marijuana. Id. ¶¶ 4-22. When the defendant called Medina and Matthews on DOC recorded phones to instruct them to send payments, he would attempt to use thinly-veiled code. For example, on February 27, 2021, Ross directed Medina to send "son" "2." That same day, Medina attempted to send Patterson $2,000 via Cash App, but Cash App rejected the transaction. Id. ¶ 17. As detailed in the PSR, the defendant frequently directed cash bribes to Patterson and, on at least four occasions, Patterson illegally smuggled contraband to the defendant. In some instances, Patterson would provide Ross with contraband in a way to hide their activities from the surveillance cameras in the facility. Id. ¶ 19.

The defendant's claim that he engaged in this conduct in part to have phones to "maintain contact" with his family is false. Def.'s Sentencing Mem. at 1, 12, 13. Not only do individuals incarcerated at Rikers Island have daily access to recorded phone lines (as evidenced by the defendant using those same phone lines to coordinate the bribe payments) but, in 2019, New York City made these phone calls available to inmates free of charge. Thus, the claim that the defendant would need to spend thousands of dollars in bribes to call his family is untrue. Contraband cell phones are extremely valuable items within a jail because they allow incarcerated individuals to make telephone calls without being monitored by the DOC, including about gang activities. Cell phones also allow incarcerated individuals to send text messages and use the internet, including looking up information on other inmates' criminal cases.

After his commission of the instant offense but before his arrest in this case, the defendant was convicted by a jury of criminal possession of a weapon and transferred from Rikers Island to New York State custody. The defendant is currently serving a sentence of 16 years to life and is eligible for parole in 2036. Because the defendant is here in federal custody on a writ from state custody, and the defendant would have been in custody regardless of his federal arrest, the time that the defendant has been incarcerated at the Metropolitan Detention Center is not counted in computing his federal sentence.

On July 20, 2022, the defendant pleaded guilty before the Court to Count Two of the Indictment, which charged the defendant with federal program bribery.

II.     Guidelines Calculation

The government submits that the following Guidelines range should apply:

| | |
|---|---:|
| Base Offense Level (§ 2C1.1(a)(1))) | 12 |
| Plus: More than One Bribe (§ 2C1.1(b)(1)) | +2 |
| Plus: More than $15,000 in Bribes (§ 2B1.1(b)(1)(C)) | +4 |

2

| | |
|---|---:|
| Plus: Public Official in Sensitive Position (§ 2C1.1(b)(3)) | +4 |
| Minus: Acceptance of Responsibility (§ 3E1.1) | -3 |
| Total: | <u>19</u> |

Based on a Criminal History Category of IV, the Sentencing Guidelines calculate a range of imprisonment of 46 to 57 months.[1]

      The government's calculation is the same as the Probation Department's except that the Probation Department applied a two-point enhancement under § 3B1.1(c) for the defendant being an organizer, leader, manager or supervisor of the criminal activity. Although the defendant did direct Medina and Matthews to send bribe payments to Patterson, the government respectfully submits that this adjustment is not appropriate under the facts of this case because the defendants were not in a "criminal organization," and the enhancement is not necessary to accurately account for the defendant's "relative responsibility" compared to his co-conspirators. <u>See</u> U.S.S.G. § 3B1.1 Application Notes.

      The defendant argues that the four-point enhancement under § 2C1.1(b)(3) for bribing a public official in a sensitive position should not apply. Application Note 4 defines a "sensitive position" as "a position characterized by a direct authority to make decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision-making process" and lists as examples of public officials who hold a sensitive position "a juror, a law enforcement officer, an election officer, and any other similarly situation individual." Although the Second Circuit does not appear to have addressed whether § 2C1.1(b)(3) applies to correction officers, the Third, Fourth, Fifth, Sixth and Seventh Circuits have found that correction officers at county correctional facilities and federal facilities hold "sensitive positions." <u>See</u> <u>United States v. Zamora</u>, 982 F.3d 1080, 1085-86 (7th Cir. 2020) ("Prison guards are situated similarly to law enforcement officers for purposes of § 2C1.1(b)(3) as explained in Application Note 4(B). The men and women who occupy these positions wield the coercive power of the state to maintain order and safety among the populations they protect. They are responsible for enforcing the rules.") (citation omitted); <u>United States v. Griffith</u>, 781 F. App'x 418, 421 (6th Cir. 2019); <u>United States v. Grosso</u>, 658 F. App'x 43,46-47 (3d Cir. 2016); <u>United States v. Dodd</u>, 770 F.3d 306, 312 (4th Cir. 2014); <u>United States v. Castillo Chairez</u>, 423 F. App'x 361, 362 (5th Cir. 2011); <u>United States v. Guzman</u>, 383 F. App'x 493, 494-95 (5th Cir. 2010); <u>but</u> <u>see</u>

---

[1] The government initially estimated the defendant's Criminal History Category as II, but the Probation Department's calculation of a Criminal History Category IV is accurate. Although the government is not bound to its estimate in the plea agreement, <u>see</u> ¶ 3, under these circumstances, the government has determined it will advocate for a sentence within its original estimate Guidelines estimate.

3

United States v. Henderson, 465 F. Supp. 3d 778, 780 (N.D. Ohio 2020) (declining to apply enhancement for state correction officer). Because the offense in this case involved the bribing of a correction officer who had decision-making authority like other law enforcement officers, the government submits that the PSR correctly included the enhancement under § 2C1.1(b)(3).

    The defendant notes that the government previously took the position, in connection with the sentencing of defendants involved in other bribery schemes involving correction officers, that this enhancement did not apply. See United States v. Brooks, No. 20-CR-071 (FB). However, in that same case, with respect to other defendants and upon review of the Probation Department's position and applicable case law, the government later argued that the enhancement applied. As set forth above, persuasive case law from numerous other circuits demonstrates that this enhancement should apply.

    Therefore, the government submits that the total offense level is 19 which yields an advisory Guidelines range of 46 to 57 months' imprisonment. However, as discussed below, the government submits that the Guidelines range indicated in the Plea Agreement of 33 to 41 months' custody, is an appropriate sentence in this case.

III.  Analysis

    The government submits that a sentence of 33 to 41 months' imprisonment is sufficient but not greater than necessary to achieve the goals of sentencing. As an initial matter, the defendant's conduct was serious. The defendant engaged in the bribery scheme for several months, recruited the mothers of his children to assist in his criminal plan, and coordinated multiple deliveries of cash and contraband to a corrupt correction officer. Contraband smuggling schemes threaten the safety and integrity of jails. Such bribery schemes also contribute to the deterioration of the public's trust in government and the ability of correctional facilities to safely house incarcerated individuals.

    Moreover, the defendant has been in jail or on parole for nearly his entire adult life. As set forth in the PSR, the defendant has been convicted three times of crimes involving firearms or violence. (PSR ¶¶ 50-53.) These prior convictions and attendant circumstances, together with the instant offense, demonstrate the defendant's continued disrespect for the rule of law and the high likelihood for recidivism.

    Finally, the government submits that the sentence in this case should run consecutive, and not concurrent, to the defendant's state sentence. A concurrent sentence will not satisfy any of the 3553(a) factors because it would result in no additional jail time, and thus, would not provide just punishment, specific and general deterrence, or satisfy any of the Section 3553(a) factors. Inmates who bribe correction officers to smuggle in contraband who receive no additional jail time will have little incentive not to engage in this additional criminal activity if they learn that, even if they are caught, they will not face

additional punishment. Accordingly, only a sentence of additional incarceration will provide deterrence and satisfy the Section 3553(a) factors.

IV. <u>Conclusion</u>

       For the foregoing reasons, the government respectfully requests that the Court impose a sentence between 33 to 41 months' imprisonment.

                                  Respectfully submitted,

                                  BREON PEACE
                                United States Attorney

                By:   /s/ Philip Pilmar
                      Philip Pilmar
                      Assistant U.S. Attorney
                      718-254-6106

cc:    Clerk of the Court (CBA) (by ECF)
        Patricia Pileggi, Esq. (by ECF)
        Shayna Bryant, United States Probation Officer (by E-mail)